that land, but that such fee was subject to an easement by which the westerly wall of the stoop on lot No. 32 was entitled to support upon six inches of lot No. 34. There is nothing inconsistent in this judgment with a finding that lot 34 was subject to this easement, or that at the time of the conveyance of lot 34 by the defendant to the plaintiff the covenant against incumbrances was not broken. The very judgment itself recites that it was entered in consequence of a settlement between the parties, by which the defendant agreed to restore the stoop upon the line of the plaintiff's lot, and to pay the sum of $125. Certainly, if the plaintiff here had obtained from the owner of lot 32 a release of the easement by the payment of this sum of $125, and the expense of restoring the stoop, it could not be said that, because such a conveyance or release had been obtained, and the title of the plaintiff to lot No. 34 had been made perfect by a discharge of the easement, there had not been a violation of the covenant in the defendant's deed to the plaintiff as to incumbrances upon lot No. 34; and yet this judgment does no more than to carry into effect the settlement that was recited in it, by virtue of which the plaintiff obtained an adjudication that he was the owner of that lot, and, as a consideration of obtaining that adjudication that he was the owner of the lot at the time the judgment was entered, had paid to the person claiming the incumbrance a sum of money. It seems to us, therefore, that the plaintiff was entitled to recover in this action the damages which he had sustained in consequence of this incumbrance, the existence of which was a breach of the covenants against incumbrances. As before stated, there is nothing in that judgment which could be construed as an adjudication that an incumbrance did not exist at the time of the conveyance from the defendant to the plaintiff; and it seems to me that the proof clearly shows that such an incumbrance did exist. It is not necessary now to determine the question as to the amount of the plaintiff's recovery. Whether or not he was entitled to recover the costs of defending the action brought to enforce that judgment can be reserved until the new trial, which is necessary. He was clearly entitled to recover the amount that he paid to obtain a release of the easement belonging to lot No. 32, which would include $125, and the cost of repairing the stoop and replacing it.

It follows that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, J., concurs.

---

(60 App. Div. 259.)

ROBERTS v. GRAND LODGE A. O. U. W. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. April 29, 1901.)

INSURANCE—BENEFICIARY—BY-LAWS— CHANGE — EFFECT — CHARTER — AMEND MENT.

    Insured took out a policy in the defendant association in 1890, and made C., a friend, his beneficiary. At the time the policy was issued, defendant's by-laws provided that the benefit fund should be paid to such persons as the deceased member shall direct. In 1898 the defendant asso-

ciation passed a new by-law, requiring a beneficiary to be a member of the insured's family, or one dependent on him for support; and in the same year the legislature passed an act amending the charter of the association by providing that the manner of paying benefits should be regulated by the by-laws in force at the time of a member's death. The insured died in 1899, leaving a widow. *Held*, that C. was entitled to the amount due on the policy, though she was not a member of deceased's family or dependent on him for support, since neither the by-law of 1898 nor the act of the legislature was retroactive.

Appeal from special term, New York county.

Action by Jennie Roberts against the Grand Lodge of the Ancient Order of United Workmen of the State of New York and Lily Cohen. From a judgment in favor of plaintiff (68 N. Y. Supp. 949), defendant Lily Cohen appeals. Reversed.

The action was brought to recover of the defendant corporation, a fraternal beneficiary organization, the sum of $1,000, alleged to be due the plaintiff as the wife of Nathan Roberts, deceased, who at the time of his death, on August 20, 1899, was a member of the society in good standing. The defendant Lily Cohen was joined for the reason that she claims to be entitled to the same sum by a designation made by Roberts in his lifetime. It appears that on November 28, 1890, Roberts, being then unmarried, made application for membership in the corporation, and directed that, of the fund to which he would be entitled at his death, $1,000 should be paid to his daughter, and the other $1,000 to Lily Cohen, a friend. In his application for membership he agreed "to strictly comply with the constitution, laws, and regulations which are or hereafter may be enacted," and agreed in his application for a beneficiary certificate "that compliance on my part with all the laws, regulations, and requirements which are or may be enacted by said grand lodge is the express condition upon which I am to be entitled to participate in the beneficiary fund." The certificate itself bears the words, "This certificate is issued upon the express condition that said Nathan Roberts shall in every particular while a member of said order comply with all the laws, rules, and regulations thereof." The by-laws in existence at the time the certificate was issued provided that "the grand lodge guaranties * * * the payment of the sum of two thousand dollars to such person or persons as he shall, while living, have designated pursuant to this article: * * * provided that such member shall have fully complied, while living. * * * with all the laws, rules, and regulations * * * which are now in force or may hereafter be enacted by this grand lodge." And the act of incorporation then existing provided that: "It shall be lawful for the corporation to create, hold, manage, and disburse a beneficiary fund * * * under such regulations as may be adopted by said corporation. * * * Such beneficiary fund * * * may be set apart and provided to be paid over to the families, heirs, or representatives of deceased * * * members, or to such person or persons as such deceased member, while living, shall have directed; and the collecting, management, and disbursement of the same, as well as the person or persons to whom * * * the same shall be paid on the death of a member, shall be regulated and controlled by the rules and by-laws of the corporation." The plaintiff was married to Nathan Roberts on September 19, 1894, and she continued to be his wife until his death, in 1899. In March, 1898, a new by-law was passed, providing that "each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall in every instance be one or more members of his family, an affianced wife, or some one related to him by blood, or who shall be dependent upon him." There was included, also, a clause that, if the member died without a beneficiary named who could take the fund, it should be paid to his widow. On March 4, 1898, a notification was sent to Roberts, calling his attention to the new regulation, and to the fact that he had designated Lily Cohen, who was in no wise related to him, and requesting him to make a redesignation. This he never did. In April, 1898, an act was passed by the legislature amending the incorporation act of

the society by providing that the manner of payment of the beneficiary fund should "be regulated and controlled only by the laws, rules and regulations of said corporation as the same exist and are in force at the time of the death of any member * * * with full power * * * to alter, amend, change and enact from time to time any and all laws, rules and regulations with reference to the collecting, managing and disbursement of said beneficiary fund, and the payee or payees to be named by any member of said corporation, without any notice thereof in any particular. * * * And the provisions of this section shall * * * govern and control each and every beneficiary certificate heretofore written or issued." The court at special term held that, as it was admitted that Lily Cohen did not come within the class named in the recent by-law, the widow of the deceased was entitled to receive of the defendant corporation the $1,000 due and unpaid. From the judgment thereupon entered in plaintiff's favor, the defendant Lily Cohen appeals.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Jacob W. Kahn, for appellant.
I. B. Ripin, for respondent.

O'BRIEN, J. In Sabin v. Phinney, 134 N. Y. 423, 428, 31 N. E. 1087, it was said:

"The statute under which the corporation was organized, its by-laws, together with the application for and the certificate of membership, constituted the contract which existed between the member and the society, which instruments, construed together, measure the rights of these litigants."

In that case the by-laws imposed no limitation on the persons to whom the certificate should be payable, and thereunder the appointee was changeable from time to time as the member might elect. Accordingly it was held that the appointee first designated acquired no vested right to the sum payable which would prevent the member from changing the beneficiary. This decision, however, upon which so much reliance was placed by the learned judge at special term, does not seem to us to have any controlling effect or bearing upon the facts here appearing; but, on the contrary, in principle, we think it favors the view for which the appellant contends. It is conceded that under the act of incorporation and by-laws, together with the application for the certificate of membership, which made the contract between Roberts and the defendant corporation, he had the right at the time to designate as appointee the defendant Lily Cohen; and we fail to see how, without the consent of the member, this contract, which was valid at its inception, could be impaired or destroyed either by the legislature or the society. Recognizing this principle of the sacredness of contract, the theory upon which the abrogation of these contract rights is said to rest is that such designation of Lily Cohen, though valid when made, was rendered ineffective by the agreement between the member and the society giving to the latter power to change the by-laws; and, such change having been made, the rights of these claimants to the fund must be governed by the regulations in force when the member died. The answer to this contention is obvious. The by-laws of a society must be fair and equitable and consistent with its charter. Whether, under a right reserved to alter them, a so-

ciety can impair or destroy a contract valid when made, is open to question. Here, however, under the act of incorporation of the society, which must be regarded as the law of its being, no right was originally reserved, and no power given to the grand lodge to pass any regulation affecting the designation of beneficiaries. It is true that the charter was amended years after the certificate was taken out, and in this aspect the question is again presented, how far the legislature, or the action of the society based thereon, could affect vested rights. A member having the right could change the beneficiary, but his failure to exercise such privilege, whether from disinclination or neglect, did not give the society the right to make another designation without his consent, unless such right was expressly conferred upon the society.

Apart from this, however, there is another ground upon which the appellant may confidently rest her case. Assuming that the grand lodge had power to pass the by-law limiting the class of beneficiaries, such by-law did not affect the certificate of Roberts, nor by reason thereof was he required to change the beneficiary, because it was not retroactive. There was nothing therein requiring a member who had previously made a designation to change his beneficiary, nor was there anything in its language which extended it so as to operate upon certificates which had been previously issued. An instructive discussion of the questions and of the identical by-law here involved will be found in the case of Wist v. Grand Lodge, 22 Or. 271, 29 Pac. 610, referred to with approval in Spencer v. Grand Lodge, 22 Misc. Rep. 147, 48 N. Y. Supp. 590, which latter decision was affirmed without opinion in 53 App. Div. 627, 65 N. Y. Supp. 1146. The following from the Oregon Case was quoted and approved in the Spencer Case:

"The law does not undertake by its terms to disturb what has been done. It does not nullify previous appointments. * * * It is a settled rule of construction that laws will not be interpreted to be retrospective unless by their terms they are clearly intended to be so. They are construed as operating only on cases or facts which come into existence after the laws were passed. * * * Rights will not be interfered with unless there are express words to that effect. It is not enough that upon some principles of interpretation a retroactive construction could be given to the law, but the intent to make it retroactive must be so plain and demonstrable as to include its perspective operation."

Upon the ground, therefore, that neither the by-law in question nor the amendment of the charter was retroactive, the original designation, which was valid when made, and was never changed by the member, is controlling; and as thereunder the appellant, Lily Cohen, was the beneficiary named, she is entitled to the sum due from the society.

The judgment accordingly should be reversed, with costs; and as there is no dispute as to the facts, and no advantage could result from a new trial, judgment should be ordered for the appellant, with costs. All concur.