(37 Misc. Rep. 406.)

BOTTJER v. SUPREME COUNCIL AMERICAN LEGION OF HONOR.

(Supreme Court, Trial Term, Kings County.   March, 1902.)

BENEFIT CERTIFICATE—CHANGE OF BY-LAW—VESTED RIGHTS.
    A benefit society, organized to relieve sick members, and to provide
for the families of those who might die, issued a certificate to the wife
of a member on his agreement to comply with all the laws of the order
then in force, or which might thereafter be adopted.   *Held*, that the
vested rights of the widow in the death benefit were not impaired,
where the husband thereafter committed suicide, on the ground that,
under a power in the constitution, after the issue of the certificate the
supreme council enacted a by-law reducing the death benefit if a
member died by suicide.

Action by Cate Bottjer against the Supreme Council American
Legion of Honor.   Judgment for plaintiff.

Dailey & Bell (James D. Bell, on the brief), for plaintiff.
Carr & Goodhart (Henry A. Powell, on the brief), for defendant.

SPENCER, J.   Fred Bottjer, plaintiff's husband, on or about De-
cember 13, 1886, at the city of Brooklyn, N. Y., became a beneficial
member of one of the subordinate councils of the defendant, a fra-
ternal association organized under the laws of the state of Massa-
chusetts, for the purpose, among other things, as stated in its con-
stitution:

"(4) To establish a fund for the relief of sick and distressed beneficial
members.   (5) To establish a benefit fund, from which, on the satisfactory
evidence of the death of a beneficial member of the order, who has com-
plied with all its lawful requirements, a sum not exceeding five thousand
dollars shall be paid to the family, orphans, or dependents, as the member
may direct."

Among the obligations assumed by the plaintiff's husband on be-
coming a member is the following:

"I agree to make punctual payment of all dues and assessments for which
I may become liable, and to conform in all respects to the laws, rules, and
usages of the order now in force, or which may hereafter be adopted by
the same."

In due course the defendant issued to said Bottjer and to the
plaintiff a certificate providing, among other things, as follows:

"This is to certify that Fred Bottjer is a companion of the American Le-
gion of Honor.   *   *   *   In consideration of the full compliance with all
the by-laws of the Supreme Council A. L. of H. now existing or hereafter
adopted, and the conditions herein contained, the Supreme Council A. L. of
H. hereby agrees to pay Cate Bottjer, wife, five thousand dollars, upon satis-
factory proof of the death, while in good standing upon the books of the
supreme council, of the companion herein named."

Fred Bottjer died May 31, 1900, while in good standing in the
order; and the plaintiff, his widow, brings this action to recover
the amount named in the certificate.   The defendant resists on the
ground that Bottjer committed suicide, and that, by virtue of the
by-laws of the defendant now in force, the beneficiaries of members
so dying may recover only a certain specified proportion of the
amount named in their certificates.   It is conceded that, at the time

Bottjer became a member of the defendant order, no such by-law was in existence; but the defendant has alleged and proven that in October, 1899, the supreme council, located in Boston, Mass., under the power reserved to it in the constitution to alter or amend the laws governing the benefit fund, adopted a new by-law, which, among other things, provides as follows:

"In case the member shall die by suicide, sane or insane, or by alcoholism, or by legal execution for crime, there shall only be due and payable to the beneficiary, under the benefit certificate, the then value of the certificate, to be ascertained on the basis of the proportion of time that the member had been in the order as it varies as to his life expectancy at the time of the member's admission, as fixed by the American expectation tables."

The questions thus presented to this court are (1) whether the foregoing by-law was retroactive in its operations; and (2) whether the defendant had the power by such legislation to impair pre-existing obligations. Both of these questions are involved in serious difficulty, and, while I am inclined to the opinion that the by-law under consideration is not retroactive, I prefer to rest the decision of this case upon the want of power in the defendant. It is clear, I think, from the decisions in this state, that, under a contract such as this, there is some limitation to the powers of the defendant to affect by legislation the rights of its members and of the beneficiaries named in their membership certificates. It may be difficult to define the line of limitation, but that such a line exists is, I think, clearly indicated. Thus in Kent v. Mining Co., 78 N. Y. 159, 182, the court of appeals says:

"All by-laws must be reasonable, and consistent with the general principles of the laws of the land, which are to be determined by the courts when a case is properly before them. A by-law may regulate or modify the constitution of a corporation, but cannot alter it. The alteration of a by-law is but the making of another upon the same matter. * * * If, then, the power is reserved to alter, amend, or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws, agreeable to law. But a by-law that will disturb a vested right is not such. And it differs not when the power to make and alter by-laws is expressly given to a majority of the stockholders, and that the obnoxious ordinance is passed in due form."

In Poultney v. Bachman, 31 Hun, 49, the plaintiff became a member of the defendant society in 1849, at a time when its by-laws provided that sick members should receive a benefit of $4 per week. In 1875 the plaintiff was taken sick, and received such benefit until July, 1879, when the by-laws were amended, reducing such benefit to $1 a week to such members as had been sick for 12 months. The plaintiff disputed the right of the defendant order to make the change, and brought suit for the larger amount, and it was held that the society had the legal right to make the change. Also in Hutchinson v. Supreme Tent of Knights of Maccabees, 68 Hun, 355, 22 N. Y. Supp. 801, the plaintiff became a member of the defendant order under an agreement similar to the one here. The constitution of the defendant at that time provided that, upon the permanent disability of a member, he should receive an advance benefit of one-half of the amount named in his certificate; and it was held that the society had the right to amend the constitution by reducing such advance

benefit to one-tenth part of the amount named in the certificate. In Roberts v. Cohen, 60 App. Div. 259, 70 N. Y. Supp. 57, the deceased became a member of the defendant society in 1890. He was unmarried, and, in his application, directed that upon his death $1,000 of the benefit fund should be paid to his daughter, and $1,000 to Lilly Cohen, a friend. In 1894 he married the plaintiff, who continued to be his wife until his death, in 1899. In March, 1898, a new by-law was adopted, as follows:

"Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall in every instance be one or more members of his family, an affianced wife, or some one related to him by blood, or who shall be dependent upon him."

It also provided that, in case a member died without naming a beneficiary, his widow should take the fund. The deceased was notified of the change, and that his beneficiary, Lilly Cohen, did not come within the new regulations; and he was asked to make a redesignation, which he never did. In determining what effect, if any, this amendment had upon the rights of Lilly Cohen, the court made use of the following language:

"He had the right * * * to designate as appointee the defendant Lilly Cohen, and we fail to see how, without the consent of the member, this contract, which was valid at its inception, could be impaired or destroyed either by the legislature or the society. * * * The by-laws of a society must be fair and equitable, and consistent with its charter. Whether, under a right reserved to alter them, a society can impair or destroy a contract valid when made, is open to question. * * * A member having the right could change the beneficiary, but his failure to exercise such privilege, whether from disinclination or neglect, did not give the society the right to make another designation without his consent, unless such right was expressly conferred upon the society."

In Shipman v. Protected Home Circle, 66 App. Div. 448, 73 N. Y. Supp. 594, the court, at trial term, in speaking of the reservation of power of the defendant order to affect the rights of its members by subsequently enacted by-laws, says:

"It may well be suggested that this reservation to amend its by-laws, with reference to which the member promised to comply, referred to other matters ordinarily incident to the management of such associations, and not to such a vital matter as impaired its liability, and limited the risk upon which the original certificate of membership was obtained. I am inclined, however, to the opinion that the defendant had the right to make this change in its by-laws, and that it could have limited its liability, even as regards such of its members as had become members of the defendant order before the change was made."

In Feierstein v. Supreme Lodge (Sup.) 74 N. Y. Supp. 558, the certificate was issued to the plaintiff's husband in January, 1896; she being named as beneficiary therein. In June of the same year a by-law was adopted as follows: "The order will not pay the benefits of those members who commit suicide." In July following the plaintiff's husband committed suicide. The court, in speaking of the nature of the plaintiff's rights under the certificate, says: "Under the certificate herein the rights of the plaintiff had become vested before the by-law was passed."

Without referring to the decisions in other states, which are by no means harmonious, I am inclined to the view that, under the decisions of this state, the power reserved to the defendant herein to affect its members by subsequent legislation did not extend to contract rights existing at the time of such legislation. In the exercise of its power the supreme council could, by appropriate legislation, regulate the amount of weekly or monthly benefits which sick or distressed members should from time to time receive from the fund being maintained for that purpose, as might be reasonable in the due and orderly administration of its affairs; but in the exercise of this power it could not impair or destroy the vested rights belonging to such members, or their beneficiaries named in their certificates of membership. The constitution, in effect, provides that upon the death of plaintiff's husband the plaintiff shall receive a sum not exceeding $5,000, and the certificate issued to them names that sum, without qualification or limitation. For 13 years and over the plaintiff's husband continued to pay his dues and assessments in order to establish the fund from which this payment to his widow was to be made. Her right to claim its payment became vested in her as soon as the contract was made in her behalf,—a right not to be defeated or impaired, except by a subsequent agreement between the parties to the original agreement. The enactment of a subsequent by-law does not constitute such an agreement. It may be true that the society, under its reserve power to legislate, could impose such conditions upon the beneficiaries named in the certificates of its members as might be necessary for the proper administration of its affairs; but in so doing it had not the power to impair the contract rights of those beneficiaries, or confer them upon others. The agreement on the part of plaintiff's husband "to conform to the laws, rules, and usages of the order now existing or hereafter adopted" is not an agreement upon his part to surrender his contract rights, or those of the beneficiary named in his certificate of membership, to the arbitrary will of the governing body of the society, any more than the oath of allegiance and obedience of the laws of the land is a surrender on the part of the citizen of his contract rights to the arbitrary will of the legislature. As was well said in Roberts v. Cohen, supra, "The by-laws of the society must be fair and equitable, and consistent with its charter." The by-law under consideration does not, to my mind, satisfy any one of these requirements. To determine this question, it is necessary to keep in mind the avowed object of the association, viz., to furnish assistance to its sick and distressed members, and make pecuniary provision for the families and dependents of such as shall die. It assumes equal obligations toward its members and to the beneficiaries named in their certificates, and it may not, solely under its general powers of legislation, inject into its contracts with them a condition or penalty not fairly within the contemplation of the parties at the time their relations were created. This is what the by-law under consideration attempts to accomplish. It contemplates the retention of members who may become either lunatics, inebriates, or criminals, and provides for the collection from them

of the same assessments and stated dues for the establishment of its funds as in the case of other members, until such sick or vicious members shall be overtaken by the probable consequences of their diseases or sins, and then, because of such consequences, and for no other reason, imposes upon their families and dependents, whose misfortunes the association was bound to mitigate, rather than aggravate, a penalty, by the impairment of their rights under the agreement made in their behalf.  Nor can legislation on the part of this society be regarded as reasonable which arbitrarily consigns such of its members as are so unfortunate as to become victims of insanity to the same category with those who are justly electrocuted for their crimes.  The environment of the defendant's supreme council is inadequate to illuminate the intellectual obtuseness that creates such a classification.  Any legislation on the part of the defendant society which directly or indirectly accomplishes such results must be regarded as violative of the spirit and terms of its constitution, and beyond the scope of the legislative powers of its governing body.

I therefore conclude that the by-law adopted in October, 1899, was invalid as against such of its members who stood in the same relation to it as did the husband of the plaintiff, and that it was ineffectual to impair or destroy the vested rights of the plaintiff in the contract then existing between the defendant and her husband for her benefit.  It follows that the motion made by the plaintiff's counsel at the close of the case must be granted, and a verdict directed for the plaintiff as of February 6, 1902, for $5,525 principal and interest, together with costs, and an additional allowance of 5 per cent. upon the recovery.  Let judgment be entered accordingly.

Judgment accordingly.